**CONTINUATION IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Kimberly DiPierro, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.  I am a Special Agent with the Federal Bureau of Investigation (FBI). I, Kimberly DiPierro, am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and have been so employed since 2024. I am currently assigned to the Detroit Field Office, Kalamazoo Resident Agency. During my employment with the FBI, I have conducted investigations involving violations of federal criminal laws, including violations related to child exploitation and child pornography. I am familiar with the various statutes of Title 18, United States Code, Chapter 110 – sexual exploitation and other abuse of children, including violations pertaining to sexual exploitation and attempted sexual exploitation of children (18 U.S.C. § 2251(a)), distribution or receipt of child pornography (18 U.S.C.§ 2252A(a)(2)) and possession of child pornography (18 U.S.C. § 2252A(a)(5)(B). I am a federal law enforcement officer and, therefore, authorized by the Attorney General to request a Search Warrant under Federal Rule of Criminal Procedure 41.

3.  This affidavit is based upon my personal knowledge, my review of documents and other evidence, my conversations with other law enforcement personnel and other individuals, and my training and experience concerning the use of computers in criminal activity and the forensic analysis of electronically stored information ("ESI"). This affidavit is intended to show only that there is probable cause for the requested warrant and does not set forth all my knowledge about

1

this matter. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. Based on my training and experience and the facts as set forth in this continuation, there is probable cause to believe that violations of 18 U.S.C. § 2251(a), sexual exploitation and attempted sexual exploitation of children; 18 U.S.C. § 2252A(a)(2), coercion and enticement and attempted coercion and enticement (hereinafter the "**Subject Device**," described more fully in Attachment A). The categories of electronically stored information and evidence sought are described in Attachment B.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5. The property to be searched, the **Subject Device**, is:

    a. A black Apple iPhone Pro Max A2342. With a cracked front screen and a cracked backside, in an Otterbox case.

6. On November 20, 2021, Samuel KUHL fled from the scene after the vehicle he was a passenger in collided with a Porter, Indiana police officer during a pursuit. Two young adult females and one juvenile female were also passengers inside the vehicle and remained at the scene of the crash. All three females were interviewed by the Indiana State Police (ISP) and their accounts of the events leading to the crash were consistent.

7. The females stated they were picked up in Kalamazoo that same day (11/20/2021) by Aries ATLAS and they agreed to a one-day road trip to Chicago to meet Atlas's friend, later determined to be KUHL. KUHL was staying at an Airbnb in an apartment complex in downtown Chicago. After ATLAS and the three females picked KUHL up in Chicago, an argument ensued inside of the vehicle, during which KUHL threatened one of the female passengers with a handgun

tucked in his waistband. All three female passengers observed KUHL carrying a large stack of ATM debit cards. KUHL drove the group around downtown Chicago telling the females that he was looking for ATMs to withdraw money. KUHL was having difficulties finding an ATM and withdrawing funds, but according to one female, KUHL was successful in withdrawing funds.

8. Twenty-seven (27) ATM debit cards in different names purporting to be issued by the Illinois Unemployment Agency were seized by ISP from the damaged vehicle after the aforementioned crash. ISP also seized the following items during the investigation:

    a. One (1) handgun from the passenger side of the vehicle. The female witnesses state that the seized handgun was the same handgun possessed by KUHL.

    b. Two (2) fraudulent Michigan and Connecticut driver's license cards in different names but depicting KUHL's image. The fraudulent Michigan driver's license listed a Kalamazoo, MI address of 132 4th Street.

    c. The **Subject Device**, along with three other phones.

9. On December 6, 2021, the FBI received the **Subject Device** via FedEx (Tracking Number 2870 5626 9958) from sender ISP. The FBI obtained a search warrant (SW) in June of 2022 through the Western District of Michigan in order to search the contents of the **Subject Device** for fraudulent activity.  See *In the Matter of the Search of Four Smart Phones Current Located at the FBI Kalamazoo Resident Agency*. 1:22-MJ-00296-SJB. Since receiving the **Subject Device,** it has been stored at the FBI Grand Rapids Resident Agency, so the contents are, to the extent material to this investigation, in substantially the same state as they were when the **Subject Device** was first seized.

10. This application seeks a warrant to examine the **Subject Device** for evidence of child pornography, particularly described in Attachment B, based upon information further explained below.

11. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## THE SUBJECT OFFENSES

9. On December 1, 2022, FBI SA Buttery met with Michigan State Police (MSP) Trooper Colin Gensterblum. Trooper Gensterblum indicated that MSP had initiated a fraud investigation in October of 2022 involving KUHL, following KUHL's arrest in Wyoming, Michigan earlier that same month. During that investigation, MSP found indications that KUHL had engaged in a sexual relationship with a then-minor female named S.D., born in 2007.[1] MSP secured a search warrant to search the contents of KUHL's cellular device for Child Sexual Abuse Material (CSAM) and found text messages that indicated that a sexual relationship had occurred between KUHL and S.D., as well as child exploitative images and videos believed to be of S.D.

10. An interview of S.D. was conducted by MSP on November 9, 2022. S.D. stated that she did send and receive nude photographs and videos. She stated that KUHL had asked her to send him the explicit materials. She also said that the two were in a dating relationship. S.D. stated she had had sexual intercourse with KUHL approximately ten times during the year leading up to June of 2022, with two incidences of sexual intercourse reportedly occurring in a hotel room,

---

[1] The full name and date of birth are known to me but have not been included here to protect the identify of the then-minor and her personal identifying information.

which KUHL rented in South Haven, MI. S.D. reported that she had to "sneak" out to meet up with KUHL.

11. Investigators recognized the name S.D. from a prior search of the **Subject Device** in relation to a fraud investigation. Investigators had previously observed communications on the **Subject Device** that indicated that KUHL and S.D. were in an intimate relationship, and that KUHL had enticed S.D. to send him nude photographs. At the time of the initial review, investigators were unaware that the individual engaged in those conversations was a minor. Investigators did not investigate further at that time because the information was not tied to the fraud investigation.

12. During the initial search, investigators also observed numerous pornographic images and videos on the **Subject Device**. Investigators did not thoroughly review those either, because they were not tied to the fraud investigation.

13. The new information provided to FBI investigators by MSP after S.D.'s interview then prompted the FBI to seek another warrant to search the **Subject Device** for evidence of child pornography. The **Subject Device** was being used by KUHL during the period when KUHL and S.D. were engaged in a sexual relationship, and the CSAM was reportedly being created.

14. On January 25, 2023, a search was authorized in the Western District of Michigan under 1:23-mj-00039 to search two of KUHL's phone, a Samsung and an iPhone. The iPhone searched in 1:23-mj-00039 is the **Subject Device**.

15. Investigators executed the search warrant under 1:23-mj-00039 and on the **Subject Device** found messages relating to the sexual relationship between S.D. and KUHL. Some examples include:

5

    a. On September 17, 2021, KUHL messaged S.D. saying, "Still I wanna see you tonight[.]" When she asked him, "What we finna do lol," he responded with an emoji and the words "chill talk fuck[.]"

    b. A couple of days later, on September 19, 2021, S.D. told KUHL, "You only wanna hang at night an I don't want that bc all u want is sex."

    c. On September 21, 2021, S.D. told KUHL that she was not 17 or 16 and KUHL responded with, "wait so you're 15[.]"

    d. In a message dated October 31, 2021, S.D. offered to send KUHL pictures to "get [him] hard" and KUHL responded "girl send em," but then indicated he was seeking sex.

16. During the execution of the search warrant under 1:23-mj-00039, investigators found a video dated October 27, 2021, on the **Subject Device**. The video depicted a close up of a female's vagina and was found as an attachment within the chats between S.D. and KUHL. The female was touching herself with her fingers. Investigators identified this image as child sexual abuse material.

17. After the **Subject Device** was searched, KUHL was charged federally in 1:23-cr-44. On April 15, 2025, a Superseding Indictment was filed. This matter is now set for trial on June 24, 2025.

18. In preparation for trial, investigators discovered that the external drive containing the extraction of the **Subject Device** at the Kalamazoo Department of Public Safety had been corrupted. The extraction is no longer available for review.

19. It is a violation of federal law to engage in the behavior described above. Criminal violations include 18 U.S.C. § 2251(a), sexual exploitation and attempted sexual exploitation of children and 18 U.S.C. § 2422A(b), coercion and enticement and attempted coercion and enticement (**Subject Offenses**).

## TECHNICAL TERMS

20. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.

    b. Smart Phone: A "smart phone" is one that operates as a wireless phone but also performs many of the functions of a computer, such as storing data (*i.e.*, names,

7

addresses, appointments, or notes), utilizing computer programs and applications, accessing the internet, and sending and receiving email. Smart phones have an operating system capable of running downloaded applications including, but not limited to, word-processing applications and social media applications like Facebook and Instagram. Smart phones often include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Smart phones typically include global positioning system ("GPS") technology for determining the location of the device.

 c. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

 d. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature

8

hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

 e. <u>GPS</u>: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

 f. <u>IP Address</u>: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer and smart phone attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer or smart phone may be directed properly from its source to its destination.

>    Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic— that is, frequently changed—IP addresses. Most smart phones have dynamic IP addresses.
>
>    g. <u>Internet</u>: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

21.     Based on my training, experience, and research, I know that the **Subject Device**, an Apple iPhone, is a "smart phone" that, in addition to serving as a wireless telephone, has capabilities that allows it to serve as a digital camera, portable media player, and GPS navigation device. Additionally, as a smart phone, the **Subject Device** operates as a computer that can download and run multiple applications; they can connect to the internet and are assigned IP addresses when connected to the internet.

22.     In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Also, in my training and experience, as well as the training and experience of other law enforcement officers with whom I work, I know that individuals involved in the sexual exploitation of a minor frequently utilize wireless telephones to communicate with their coconspirators and facilitate the subject offenses. I know that wireless telephones, and smart phones in particular, often contain evidence indicative of sexual exploitation of a minor, including confirmation of the telephone number associated with the device, records of incoming and outgoing calls and text

messages with co-conspirators; voicemail messages; photographs and video recordings of the sexual exploitation of a minor.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18. Based on my knowledge, training, and experience, I know that electronic devices, including the Apple iPhone, can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

19. <u>Forensic evidence</u>: As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Subject Device** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Device** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

  d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20. <u>Nature of examination</u>: Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Device** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **Subject Device** to human inspection to determine whether it is evidence described by the warrant.

21. <u>Manner of execution</u>: Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23. I respectfully submit that there is probable cause to believe that Samuel KUHL has committed the **Subject Offenses**, and that evidence of this criminal activity is likely to be found on the **Subject Device**. I submit that this application supplies probable cause for a search warrant authorizing the examination of the **Subject Device** described in Attachment A to seek the items described in Attachment B.